OPINION OF THE COURT
 

 Levine, J.
 

 In 1994, petitioners retained Proskauer Rose Goetz and Mendelsohn LLP to provide all legal services in connection with a $175 million mortgage financing with Nomura Asset Capital Corporation and Nomura Securities International, Inc. (Nomura mortgage financing) and a restructuring of ownership interests, all involving four major New York City office buildings and various interests in six other New York properties. The restructuring entailed the formation of numerous limited liability companies, the conversion of existing partnerships to limited liability companies and the transfer of real estate assets, partnership interests and membership interests to a number of these limited liability companies.
 

 Those transactions were completed at the end of 1995. The legal work in planning, structuring, negotiating and preparing
 
 *33
 
 the necessary closing papers was, concededly, of very substantial complexity, for which the fees totaled approximately $1 million. The closing report alone consisted of some 14 volumes containing more than 550 documents.
 

 In early 1996, petitioners and the Proskauer firm had a falling out. Petitioners then retained Nixon, Hargrave, Devans, & Doyle LLP, their present counsel, to represent them in connection with all matters related to the Nomura mortgage financing and the commercial real estate ownership restructuring. Nixon, Hargrave asked Proskauer to turn over its files in their entirety on the financing and restructuring matters, and tendered a check for Proskauer’s bindery expenses for those transactions, that being the only remaining outstanding claim of Proskauer for payment with respect to services and disbursements arising out of those matters.
 

 In addition to the closing report documents previously delivered, in the course of negotiations between the two firms during the spring of 1996, Proskauer also turned over additional documents from its files consisting of client-supplied papers, client correspondence and what could be characterized as supporting closing papers such as appraisals, tax forms, formal legal opinions and environmental and engineering reports. The firm also furnished a 58-page index of its files on the Sage Realty transactions obtained from its records department’s computerized file management program. Proskauer refused, however, to turn over a large number of items identified in the index such as internal legal memoranda, drafts of instruments, mark-ups, notes on contracts and transactions and ownership structure charts. Petitioners claim that Proskauer also failed to turn over firm correspondence with third parties and conference negotiation notes.
 

 This special proceeding was then commenced by petitioners to recover all of the outstanding papers in the Proskauer files relating to Proskauer’s representation on the foregoing real estate financing and restructuring matters. The petition alleges that, although the Nomura mortgage financing and commercial real estate ownership restructuring may have culminated in a closing, there remain outstanding complex financial and tax reporting obligations of petitioners requiring legal guidance from their present counsel. In subsequent affidavits, Nixon, Hargrave averred that the underlying documents, such as drafts and transaction charts, are needed for complete understanding of how certain provisions in the various legal instruments were finally negotiated and to assess the full
 
 *34
 
 extent of petitioners’ ongoing compliance obligations. Proskauer’s response was that all third-party correspondence and all documents provided by petitioners in relation to these transactions had been delivered and that those papers, together with the previously delivered closing binder containing all closing instruments, supporting documents and summaries of contents, were amply sufficient to enable present counsel to advise petitioners on their continuing obligations. Proskauer refused to make any further general transfer of its files on the represented matters, albeit expressing willingness to entertain a particularized request upon a showing of need.
 

 Supreme Court, relying upon
 
 Zackiva Communications Corp. v Milberg Weiss Bershad Specthrie & Lerach
 
 (223 AD2d 417), accepted Proskauer’s position that petitioners were not entitled to more from the firm’s files than the closing binder documents and their own client papers, all of which had previously been furnished by that firm. The Appellate Division affirmed (235 AD2d 355). That Court held that as to the "concluded business financing and restructuring matters,” the Proskauer files at issue, the firm’s "drafts, internal memoranda, mark-ups, research” and other internal documents containing " 'the opinions, reflections and thought processes’ ” of counsel were Proskauer’s "private property,” which need not be furnished to petitioners absent a showing of particularized need. We granted petitioners leave to appeal, and now reverse.
 

 A majority of courts and State legal ethics advisory bodies considering a client’s access to the attorney’s file in a represented matter, upon termination of the attorney-client relationship, where no claim for unpaid legal fees is outstanding, presumptively accord the client full access to the entire attorney’s file on a represented matter with narrow exceptions
 
 (see, Resolution Trust Corp. v H
 
 — ,
 
 P. C.,
 
 128 FRD 647; State Bar of Ga, Formal Advisory Opn No. 87-5; Massachusetts Rules of Court, rule 3:07, DR 2-110 [A] [4] [1997]; Ohio Sup Ct Bd of Commrs on Grievances and Discipline, Opn No. 92-8;
 
 Maleski v Corporate Life Ins. Co.,
 
 163 Pa Commw 36, 641 A2d 1;
 
 Matter of Kaleidoscope, Inc. v Powell, Goldstein, Frazer & Murphy,
 
 15 Bankr 232,
 
 revd on abstention grounds 25
 
 Bankr 729; State Bd of Cal Standing Comm on Professional Responsibility and Conduct, Formal Opn No. 1992-127; Connecticut Bar Assn Comm on Professional Ethics, Opn No. 94-1; State Bar of Mich Comm on Professional and Judicial Ethics, Syllabus CI-926 [1983]; Oregon State Bar Assn, Formal Opn No. 1991-125).
 

 The American Law Institute, in its Restatement (Third) of the Law Governing Lawyers essentially embraced the majority
 
 *35
 
 position
 
 (see,
 
 Restatement [Third] of Law Governing Lawyers § 58 [Proposed Final Draft No. 1, 1996]). The draft Restatement provides that a former client is to be accorded access to "inspect and copy
 
 any documents possessed
 
 by the lawyer
 
 relating to the representation,
 
 unless substantial grounds exist to refuse”
 
 (id.,
 
 § 58 [2] [emphasis supplied]). Even without a request, an attorney is obligated to deliver to the client, not later than promptly after representation ends, "such originals and copies of other documents possessed by the lawyer relating to the representation as the * * * [former] client reasonably needs”
 
 (id.,
 
 § 58 [3], comment
 
 d).
 

 By contrast, a minority (although a substantial number) of courts and State bar legal ethics authorities, including the Appellate Division in this case and in
 
 Zackiva Communications Corp. v Milberg Weiss Bershad Specthrie & Lerach (supra),
 
 distinguish between documents representing the "end product” of an attorney’s services, which belong to the client, and the attorney’s "work product” leading to the creation of those end product documents, which remains the property of the attorney
 
 (see, Federal Land Bank v Federal Intermediate Credit Bank,
 
 127 FRD 473,
 
 mod
 
 128 FRD 182;
 
 Corrigan v Armstrong, Teasdale, Schlafly, Davis & Dicus,
 
 824 SW2d 92 [Mo Ct App]; Alabama State Bar, Formal Ethics Opn RO-86-02; Arizona State Bar Comm on Rules of Professional Conduct, Opn No. 92-1; Illinois State Bar Assn, Opn No. 94-13; North Carolina State Bar Ethics Comm, RPC 178 [1994]; Rhode Is Sup Ct Ethics Advisory Panel, Opn No. 92-88 [1993]).
 

 End product, under the foregoing minority view, includes such items as pleadings actually filed in an action; correspondence with a client, opposing counsel and witnesses; and other papers "exposed to public light by the attorney to further [the] client’s interests”
 
 (Federal Land Bank v Federal Intermediate Credit Bank, supra,
 
 127 FRD, at 479); and the final versions of contracts, wills, corporate records and similar records prepared for the client’s actual use
 
 (see,
 
 Illinois State Bar Assn, Opn No. 94-13). The attorney’s work product, to which the client is not entitled access, includes all preliminary documents "used by the lawyer to reach the end result,” such as internal legal memoranda and preliminary drafts of pleadings and legal instruments
 
 (Federal Land Bank v Federal Intermediate Credit Bank, supra,
 
 127 FRD, at 479). As to these and similar documents, the minority view is that the client is only entitled to access to the extent of a demonstrated need in order to understand the end product documents, with the burden of
 
 *36
 
 justification on the client (see,
 
 Corrigan v Armstrong, Teasdale, Schlafly, Davis & Dicus, supra,
 
 824 SW2d, at 98).
 

 We conclude that the majority position, as adopted in the final draft of the American Law Institute Restatement (Third) of the Law Governing Lawyers, represents the sounder view. First, an expansive general right of the client to the contents of the attorney’s file, upon termination of the attorney-client relationship, more closely conforms to the position taken by the courts of this State on the client’s broad rights to the contents of the file when representation ceases on a matter still pending (see,
 
 Tekni-Plex, Inc. v Meyner & Landis,
 
 89 NY2d 123, 137,
 
 rearg denied
 
 89 NY2d 917;
 
 Matter of Vega,
 
 94 AD2d 799;
 
 Melendez v Union Hosp.,
 
 88 AD2d 831). An "attorney’s work product” exception has been rejected in that context (see,
 
 Matter of Vega, supra,
 
 at 800;
 
 Melendez v Union Hosp., supra,
 
 at 831-832).
 

 Moreover, when the attorney’s file is sought in connection with a pending matter, courts also have refused to recognize a property right of the attorney in the file superior to that of the client (see,
 
 Bronx Jewish Boys v Uniglobe, Inc.,
 
 166 Misc 2d 347, 350;
 
 see also, In Re Grand Jury Proceedings,
 
 727 F2d 941, 944,
 
 cert denied sub nom. Vargas v United States,
 
 469 US 819;
 
 Matter of Calestini,
 
 321 F Supp 1313, 1316). We can discern no principled basis upon which exclusive property rights to an attorney’s work product in a client’s file spring into being in favor of the attorney at the conclusion of a represented matter. Indeed, this case illustrates that, often, no unequivocal line can be drawn between pending and completed legal matters; hence, the continued likelihood of useful reference to work product materials in the client’s file.
 

 Second, the minority position adopted by the courts below unrealistically and, in our view, unfairly places the burden on the client to demonstrate a need for specific work product documents in the attorney’s file on the represented matter. Again, this case is illustrative that in a complex transaction where the file may be voluminous (commensurably increasing the likely usefulness of work product materials to advise the client concerning ongoing rights and obligations), the client’s need for access to a particular paper cannot be demonstrated except in the most general terms, in the absence of prior disclosure of the content of the very document to which access is sought.
 
 The attorney in
 
 possession
 
 of
 
 the contents
 
 of the
 
 file is in a far better position to demonstrate that a particular document would furnish no useful purpose in serving the client’s present needs for legal advice.
 

 
 *37
 
 Affording the client presumptive access to the attorney’s entire file on the represented matter, subject to narrow exceptions, is also supported, although not necessarily dictated, by the lawyer’s ethical obligations arising out of representation in a given matter. As we recognized in
 
 Tekni-Plex, Inc. v Meyner & Landis
 
 (89 NY2d, at 130,
 
 supra),
 
 an attorney’s fiduciary relationship with a client may continue even after representation has concluded. Among the duties of an attorney as a fiduciary and agent of the client are those of openness and conscientious disclosure. As we remarked in another context, equally applicable here, "[s]ince the reign of Elizabeth I, the law has as a matter of policy encouraged full disclosure between attorney and client”
 
 (Matter of Jacqueline F. [Segal],
 
 47 NY2d 215, 218). That obligation of forthrightness of an attorney toward a client is not furthered by the attorney’s ability to cull from the client’s file documents generated through fully compensated representation, which the attorney unilaterally decides the client has no right to see
 
 (see,
 
 Restatement [Third] of Law Governing Lawyers,
 
 op. cit.,
 
 § 58, comment c [citing full disclosure obligations of a fiduciary to a beneficiary and of an agent to a principal in Restatement (Second) of Trusts § 173, at 378; Restatement (Second) of Agency § 381, at 182];
 
 Resolution Trust Corp. v
 
 H — ,
 
 P. C., supra,
 
 128 FRD, at 649-650;
 
 Matter of
 
 Kaleidoscope,
 
 Inc. v Powell, Goldstein, Frazer & Murphy, supra,
 
 15 Bankr, at 244).
 

 Thus, we conclude that the courts below erred in restricting petitioners’ access to the Proskauer files on the firm’s representation in the instant financing and real estate ownership restructuring matters essentially to end product documents. Barring a substantial showing by the Proskauer firm of good cause to refuse client access, petitioners should be entitled to inspect and copy work product materials, for the creation of which they paid during the course of the firm’s representation.
 

 Proskauer, however, should not be required to disclose documents which might violate a duty of nondisclosure owed to a third party, or otherwise imposed by law
 
 (see, e.g.,
 
 Restatement [Third] of Law Governing Lawyers,
 
 op cit.,
 
 § 58, comment c). Additionally, nonaccess would be permissible as to firm documents intended for internal law office review and use. "The need for lawyers to be able to set down their thoughts privately in order to assure effective and appropriate representation warrants keeping such documents secret from the client involved”
 
 (id.).
 
 This might include, for example, documents containing a firm attorney’s general or other assessment of the
 
 *38
 
 client, or tentative preliminary impressions of the legal or factual issues presented in the representation, recorded primarily for the purpose of giving internal direction to facilitate performance of the legal services entailed in that representation. Such documents presumably are unlikely to be of any significant usefulness to the client or to a successor attorney. Upon remittal, which will be required in the instant case, disputes concerning access to these and other categories of internal law firm papers will be resolved in the first instance by Supreme Court through a hearing which might necessitate in camera review. Moreover, Proskauer can apply to that court for protective remedies in the event of oppression or harassment in connection with demands for file inspection, delivery of original documents or reproduction.
 

 We also conclude that, as a general proposition, unless a law firm has already been paid for assemblage and delivery of documents to the client, performing that function is properly chargeable to the client under customary fee schedules of the firm, or pursuant to the terms of any governing retainer agreement.
 

 Finally, we caution that our holding in this matter is not to be construed as altering any existing standard of professional responsibility or generally accepted practice concerning a lawyer’s duty to retain and safeguard all or portions of a client’s file once a matter is concluded. The dispute here is solely over client access to the specific files which, in fact, were retained following the termination of Proskauer’s representation.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings not inconsistent with this opinion.
 

 Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur; Chief Judge Kaye taking no part.
 

 Order reversed, with costs, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.