[754 NYS2d 220]

SCHNEIDER, KLEINICK, WEITZ, DAMASHEK & SHOOT, Appellant, v
CITY OF NEW YORK et al., Respondents.

First Department, December 24, 2002

184

**APPEARANCES OF COUNSEL**

*Diane Welch Bando* of counsel (*Schneider, Kleinick, Weitz & Damashek*, attorneys), for appellant.

*Paul L. Herzfeld* of counsel (*Francis F. Caputo* and *Gary P. Rosenthal* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for respondents.

**OPINION OF THE COURT**

MAZZARELLI, J.P.

On this appeal we must determine whether attorneys who have been discharged in an action, and who have unsuccessfully attempted to collect their fee from counsel who replaced them and settled the case, may sue the defendant in the underlying matter directly. And, because the City of New York is the defendant in the underlying action, we must also decide whether plaintiff here was required, as a prerequisite, to file a notice of claim pursuant to General Municipal Law § 50-i.

*The Facts*

Plaintiff Schneider, Kleinick, Weitz, Damashek & Shoot (hereinafter the Schneider firm), as successor in interest to Damashek, Godosky & Gentile (the Damashek firm), represented two infant plaintiffs in an action (the *Mills* action) against the City of New York for injuries caused by exposure to lead paint. Plaintiff conducted all of the discovery in the matter and filed the note of issue. They were discharged in October 1993. Thereafter, Edgar Jordan III and Philip Frederick were substituted as counsel for the *Mills* plaintiffs. Steven Levi of the office of the Corporation Counsel represented the City of New York throughout the defense and settlement of the *Mills* action.

On January 29, 1998, by letter to Mr. Levi, the Schneider firm gave formal notice to the City of its attorney's charging lien in the *Mills* case. They requested that "any proceedings in settlement of [the] action reflect [their] claim." In August 1998, Jordan and Frederick moved to vacate the Schneider firm's charging lien, urging that the former firm had been discharged for cause. This application was then withdrawn, without prejudice to renewal at the conclusion of the action.

On June 2, 1999, Mr. Levi telephoned the Schneider firm and advised that he had been discussing resolution of the *Mills* action with Jordan and Frederick for $625,000. Later, on June 22, 1999, the *Mills* court approved a structured settlement of the infants' claims for that amount, awarding attorneys' fees of $218,000 to plaintiffs' counsel, and specifically directing payment to Jordan and Frederick. Levi left a telephone message with the Schneider firm on June 30, 1999, indicating that he had received a copy of an order in the *Mills* action which did not include a provision for the Schneider firm's fee.

On July 16, 1999, the Schneider firm moved to restrain the City from disbursing the attorneys' fees, to direct the City to place those fees in escrow and to schedule a hearing for their apportionment. The motion court denied the application and on July 27, 1999, the City paid Jordan and Frederick the full $218,000.

On August 23, 1999, the *Mills* court referred the issues of the validity and the amount of the Schneider firm's charging lien to a special referee. By written order dated September 13, 1999, it also directed Jordan to place the fees in an interest-bearing attorney's account to be held in escrow pending a final determination. Following a hearing, the referee recommended that the Schneider firm be paid 80% of the attorneys' fees. The *Mills* court confirmed this recommendation, and on August 14, 2000 directed Jordan and Frederick to pay the Schneider firm $174,563.40. Jordan and Frederick did not comply.

On October 3, 2000, the Schneider firm served a demand for payment of its fees upon the City. It subsequently commenced this action alleging that the defendants were "negligent and reckless" in failing to honor and protect the lien; and that the defendants' conduct constituted prima facie tort. Defendants moved to dismiss the complaint on three grounds: (1) failure to comply with General Municipal Law §§ 50-e and 50-i; (2) as untimely under General Municipal Law § 50-i (1) (c); and (3) for failure to delineate facts supporting a cause of action for prima facie tort. The trial court converted defendants' motion

to one for summary judgment, and plaintiff cross-moved for leave to file a late notice of claim.

The court granted defendants' motion and denied plaintiff's cross motion. It concluded that plaintiff's claims accrued on July 27, 1999, when the City paid Jordan and Frederick $218,000, and was therefore time-barred under General Municipal Law § 50-i (1) (c). The court also found that the Schneider firm failed to state a cause of action for negligence because the *Mills* court's September 13, 1999 order directed Jordan, rather than the City, to hold the funds in escrow. It dismissed the cause of action for prima facie tort for failure to state a claim.

*Discussion*

■ We disagree. Plaintiff's complaint, while not artful, sufficiently sets forth a claim pursuant to Judiciary Law § 475 against the City of New York. There is no dispute that the essence of the complaint is the enforcement of the charging lien, and despite plaintiff's apparent misuse of negligence terms in asserting its rights, the facts support a cause of action under Judiciary Law § 475. Moreover, the claim is not encompassed by General Municipal Law § 50-i. The City had knowledge of the Schneider firm's charging lien on the settlement, and upon plaintiff's unsuccessful attempt to secure its fee from substituted counsel, plaintiff had the right to bring this plenary action to enforce the lien against the City (Judiciary Law § 475; *see Citizen's Bank of White Plains v Oglesby*, 270 App Div 136).

*Discharged Attorney's Right to Fees*

An attorney who is discharged without cause has three remedies to recover the value of his or her legal services: the retaining lien, the charging lien, and the plenary action in quantum meruit (*Butler, Fitzgerald & Potter v Gelmin*, 235 AD2d 218, 218-219). These remedies are not exclusive, but cumulative.

The "retaining lien" gives an attorney the right to keep, with certain exceptions, all of the papers, documents and other personal property of the client which have come into the lawyer's possession in his or her professional capacity as long as those items are related to the subject representation (*Matter of Lerner v Seigel*, 22 AD2d 816). This type of lien is founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached (Annotation, *Attorney's Retaining Lien: What Items of Client's Property or Funds Are Not Subject to Lien*, 70 ALR 4th 827; *First Natl. Bank & Trust Co. v Hy-*

*man Novick Realty Corp.*, 72 AD2d 858, 859 [retaining lien cannot be satisfied by property not in the possession or control of the attorney]). Further, an attorney's retaining lien generally lasts "until [the attorney's] disbursements have been fully paid and, as a general rule, his fee has been determined" (*Cosgrove v Tops Mkts., Inc.*, 39 Fed Appx 661, 664).*

The second remedy available to an attorney for recovery of his or her fee is the Judiciary Law § 475 "charging lien." This can be employed both while the action is pending, and in a separate lawsuit (*Citizen's Bank, supra*). Judiciary Law § 475, entitled, "Attorney's lien in action, special or other proceeding," provides:

> "From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, *and the proceeds thereof in whatever hands they may come*; and the lien *cannot be affected by any settlement between the parties before or after judgment, final order or determination*. The court upon the petition of the client or attorney may determine and enforce the lien" (emphasis supplied).

"The [charging] lien is predicated on the idea that the attorney has by his skill and effort obtained the judgment, and hence 'should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures.' *Williams v. Ingersoll*, 89 N.Y. 508, 517 (1882)" (*Butler, Fitzgerald & Potter v Sequa Corp.*, 250 F3d 171, 177; *see also LMWT Realty Corp. v Davis Agency*, 85 NY2d 462, 467-468). Further, enforcement of a charging lien is founded upon the equitable notion that the proceeds of a settlement are ultimately "under the control of the court, and the parties within its jurisdiction, [and the court] will see that no injustice is done to its own officers" (*Rooney v Second Ave R.R. Co.*, 18

---

* A court has discretion to "secure the fees and to order the files to be returned to the client before the fees have been paid * * * However, a court may not order the return of the file before the client has fully paid the attorney's disbursements" (*Cosgrove, supra* at 664 [citations omitted]).

NY 368, 369; *see also Fischer-Hansen v Brooklyn Hgts. R.R. Co.*, 173 NY 492, 502; *Petition of Rosenman & Colin*, 850 F2d 57, 60). However, an attorney's recovery under Judiciary Law § 475 is contingent upon his client reaching a favorable outcome, because the charging lien is a specific attachment to the funds which constitute the client's recovery (*Butler v Sequa, supra* at 177). Moreover,

> "the plaintiff must show that he comes within the statute by establishing the facts alleged in his complaint, and the action is open to any defense tending to show that no lien ever existed, or that if it once existed it was discharged with the consent of the plaintiff, or was waived or forfeited by his misconduct or neglect" (*Fischer-Hansen, supra* at 502).

The Court of Appeals addressed the breadth of the Judiciary Law § 475 charging lien and its application in *Sargent v McLeod* (209 NY 360), a case where an attorney died prior to the settlement of the litigation. The attorney had been hired pursuant to a contingency fee arrangement, and had performed some work, but did not complete the litigation before his death. Rather than hiring another attorney, the client himself settled the underlying action. The Court of Appeals held that the estate of the attorney was entitled to the reasonable value of the services he had provided his former client from the defendant in the underlying case, pursuant to Judiciary Law § 475. The Court wrote that, "[t]he defendant having knowledge of the lien may not say that it disregarded it and parted with the entire fund. It was bound to retain and the law conclusively assumes it has retained sufficient [funds] to pay the sum which the plaintiff was entitled to receive" (*Sargent, supra* at 365). Thus, according to the *Sargent* Court, a defendant, having knowledge of an attorney's lien, is required to retain sufficient funds to pay the lien, even where the defendant has a good faith belief that some event, in *Sargent* the attorney's death, extinguished the charging lien (*id.*).

A third remedy is a plenary action in quantum meruit for the reasonable value of the services rendered (*Butler v Sequa, supra* at 179; *Smith v Boscov's Dept. Store*, 192 AD2d 949; *Bruk v Albin*, 270 AD2d 441, 442; *Cushion v Nemes*, 266 AD2d 126, *lv denied* 94 NY2d 760). This cause of action accrues immediately upon an attorney's discharge, and, unlike the "retaining lien" or the "charging lien," it can be exercised by the attorney against all of the former client's assets (*Butler v*

*Gelmin, supra* at 219). In determining the value of the attorney's services provided to the client prior to discharge, a number of variables are considered.

> "[W]hile the terms of the percentage agreement is one factor that may be taken into account * * *, it is not to be considered the dispositive factor * * *. Other factors, such as the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved and amounts customarily charged for similar services in the same locality, for example, should also be considered" (*Smith v Boscov's, supra* at 950-951 [citations omitted]).

*Application of Judiciary Law § 475*

In this case, the Schneider firm has a valid Judiciary Law § 475 "charging lien" against the proceeds of the settlement in *Mills*. It can assert this lien against the City, even though the City paid the entire attorneys' fees portion of the award to Jordan and Frederick.

The Court of Appeals has described how a charging lien, a property interest in the value of the legal services provided by an attorney to his or her client, "follows its subject and cannot be shaken off by a change of form or substance" (*Fischer-Hansen, supra* at 501). It also has written that, where the parties reach a settlement before judgment or trial:

> "[the charging lien] attaches to the amount agreed upon in settlement the instant that the agreement is made, and if the defendant pays over to the client without providing for the lien of the attorney, he violates the rights of the latter and must stand the consequences. * * * The lien was not affected by the adjustment, but leaped from the extinguished cause of action to the amount agreed upon in settlement." (*Fischer-Hansen, supra* at 502.)

Thus, a defendant's payment of settlement proceeds, while on notice of a charging lien, is made at a defendant's peril (*id.* at 501). We applied this principle to facts similar to those presented here in *Morgan v Drewry* (285 App Div 1). In that case, the lien was held by an attorney who was not the attorney of record at the time of the settlement. Consistent with *Fischer*, we concluded that,

> "where a defendant settles a claim or cause of action the lien of the plaintiff's attorney attaches to

the amount agreed upon in settlement the instant the agreement is made and the law will not permit the defendant to say it has nothing in its hands to satisfy the lien. (*Fischer-Hansen v. Brooklyn Hgts. R.R. Co.*, 173 N.Y. 492 [ ]; *Sargent v. McLeod*, 209 N.Y. 360; *Matter of Levy*, 249 N.Y. 168.)" (*Morgan, supra* at 5.)

When the parties to the *Mills* action settled that case, the amount of plaintiff's charging lien was not yet determined. At that time, the Schneider firm had a vested right to an undetermined portion of the proceeds of the settlement and standing to move for a temporary restraining order to protect its fees. However, it did not yet have a right of action against the defendants for violation of the lien. Plaintiff's rights in the lien, while vested, were inchoate because the amount of the fee had still to be determined (*Williams v Hertz Corp.*, 59 NY2d 893 [motion to assert lien against judgment debtor properly dismissed prior to proceeding to fix fee]).

Plaintiff's motion practice before the *Mills* court was a procedural prerequisite to the present claim for enforcement of its charging lien against the City. When that court refused to issue a restraining order to prevent the payment of fees to Jordan and Frederick, it did not affect plaintiff's right to sue the City for its share of that fee. Rather, the *Mills* court was employing the law as it applies to restraining orders, and was demonstrating that it recognized that plaintiff's injury was not irreparable but was remediable by money damages; and that the City would have sufficient funds to pay the fee if, and when, plaintiff established its entitlement to one.

Clearly, the City had notice of plaintiff's lien. Its attorney, Mr. Levi, knew about the Schneider firm's involvement and claims in the *Mills* action, even advising them of the failure to include them in the compromise order. When it paid Jordan and Frederick the full $218,000 attorneys' fees portion of the settlement, it did so at the risk of being sued by the Schneider firm for its share of the award. As aptly stated by the Second Department, "a defendant who has knowledge of a plaintiff's attorney's lien is under an affirmative duty to protect the lien, and if he fails to do so, he is liable for the reasonable value of that attorney's services to his client" (*Sehlmeyer v Universal Oven Co.*, 118 AD2d 692, 694).

*Applicability of General Municipal Law § 50-i*

■ Defendants have argued that this action should be dismissed for failure to file a General Municipal Law notice of

claim, by mischaracterizing the action as sounding in negligence. Defendants first contend that the Schneider firm was limited to one attempt at recovery under its Judiciary Law § 475 charging lien, which they unsuccessfully exercised against Jordan and Frederick. Defendants conclude that only a distinct tort suit is available to plaintiff at this time, for the City's breach of an alleged common-law duty to protect the Schneider firm's fee, and that it is therefore subject to the notice of claim provisions.

The defendants' analysis misconstrues the breadth of Judiciary Law § 475, the foundation of plaintiff's complaint, and is squarely at odds with the relevant statutes. General Municipal Law § 50-i, entitled, "Presentation of tort claims; commencement of actions," provides:

> "1. No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury, wrongful death or damage to real or personal property alleged to have been sustained *by reason of the negligence or wrongful act of* such city, county, town, village, fire district or school district or of any officer, agent or employee thereof, * * * unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty-e of this chapter" (emphasis supplied).

General Municipal Law § 50-e provides,

> "1. * * * (a) In any case *founded upon tort* where a notice of claim is required by law as a condition precedent to the commencement of an action * * * the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises" (emphasis supplied).

Plaintiff's claim here is not one "for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of [the C]ity" as required for the application of the statute. Thus, this action is not subject to the special shortened statute of limitations for "tort" claims against municipalities set forth in General Municipal Law § 50-e, and plaintiff was not required to file a notice of claim against the City within 90 days of the accrual of its claim.

Finally, plaintiff has not waived its rights to a fee. While the law does allow for the waiving of a charging lien (*Kaplan v Reuss*, 113 AD2d 184, *affd* 68 NY2d 693; *see generally Petition of Harley & Browne*, 957 F Supp 44), that did not happen here. In this case, plaintiff was consistent in its efforts to preserve its rights to a fee. The Schneider firm first alerted the City of its charging lien by letter dated January 29, 1998, and it subsequently corresponded with the City both in writing and by phone as the *Mills* action proceeded to settlement. When that action was ultimately settled without a provision for its fees, the Schneider firm moved by order to show cause to fix and determine its lien. As part of that motion plaintiff requested that the City place that portion of the settlement which provided for attorneys' fees in escrow. Although the *Mills* court did not restrain the City from disbursing the fees to Jordan and Frederick, the City was nonetheless on notice that the Schneider firm had an outstanding claim, and it was responsible to safeguard the full amount of the Schneider firm's lien (*see Sehlmeyer, supra* at 694). As the relevant facts are undisputed, and upon search of the record, plaintiff is granted summary judgment.

Accordingly, the judgment of the Supreme Court, New York County (Michael Stallman, J.), entered August 21, 2001, which granted defendants' motion for summary judgment, should be reversed, to the extent appealed from as limited by the briefs, on the law, without costs, the motion denied, the complaint reinstated, and, upon search of the record, plaintiff granted summary judgment for its attorneys' fees of $174,563.40, plus statutory interest from July 16, 1999, the date of service of the motion to fix the plaintiff's lien. The Clerk is directed to enter judgment accordingly.

ROSENBERGER, RUBIN and GONZALEZ, JJ., concur.

Judgment, Supreme Court, New York County, entered August 21, 2001, reversed, to the extent appealed from as limited by the briefs, on the law, without costs, defendants' motion for summary judgment denied, the complaint reinstated, and, upon search of the record, plaintiff granted summary judgment for its attorneys' fees plus statutory interest.