OPINION OF THE COURT
Jack M. Battaglia, J.
*276 With this action, filed on her behalf by attorney William Pager, Esq., plaintiff Jemma B. Moore seeks damages for personal injuries allegedly sustained in an automobile accident on December 11, 2006. Exactly two years later, on December 11, 2008, plaintiff retained the law firm of Peters, Berger, Koshel & Goldberg, EC. to represent her in the action, and directed Mr. Pager to immediately “stop all work . . . and arrange for the transfer of any and all records” to the incoming attorneys.
A stipulation dated December 19, 2008, signed by Mr. Pager, the outgoing attorney, and Richard L. Goldberg, Esq., on behalf of the incoming firm, provides, among other things, that “The Law Offices of William Pager have not been discharged for cause”; that the outgoing attorney shall have “a lien ... on a portion of attorneys fees obtained” by the incoming firm; that “the fee to be paid to the outgoing attorneys [sic] . . . shall be determined by a Justice of the Supreme Court . . . , Kings County at the conclusion of the case, unless an agreement is reached between counsel, in writing prior to seeking the intervention of the Court”; and that “the entire file maintained by the outgoing attorney shall be released immediately to the incoming attorney upon receipt of this signed stipulation and a check for disbursements.” The current dispute concerns only the provision requiring release of the file upon receipt of payment for “disbursements.”
In a letter dated December 19, Mr. Pager advised Mr. Goldberg that disbursements in the total amount of $1,035.89 were owed, including a charge for a copy of the file of $517.50, computed at $.75 per page for 690 pages. Mr. Goldberg responded in a letter dated January 7, forwarding a check in the amount of $518.39, that is, the total requested less the amount for copying. Mr. Goldberg stated, “As we demanded, and are entitled, to the original file, we will not pay for copying the file.”
When Mr. Pager would not release the file without additional payment for copying, the incoming firm brought on the instant motion by an order to show cause dated February 9, 2009, seeking an order, among other things, compelling Mr. Pager to turn over the file to the incoming firm.
Preliminarily, however, the motion seeks to “[r]estor[e] the case to active status,” because on January 9, 2009 the action was administratively marked “disposed” for plaintiffs failure to file a note of issue by the date specified by court order. Since there was “no basis” for denying plaintiffs motion to restore under these circumstances (see Khaolaead v Leisure Video, 18 *277 AD3d 820, 821 [2d Dept 2005]; see also Gorski v St. John’s Episcopal Hosp., 36 AD3d 757 [2d Dept 2007]), on the return date for the motion the court issued an interim order restoring the action and scheduling a compliance conference for March 12, 2009.
The interim order, moreover, included provision for release of plaintiffs file to the incoming firm, since the outgoing attorney’s affirmation in partial opposition did not oppose that aspect of the relief sought with the instant motion. As will appear, an order for release of the file would otherwise have been in error until resolution of the dispute about the charge for copying. The court notes also that neither the outgoing attorney nor the incoming firm questions the appropriateness of the instant motion as a vehicle for resolution of that dispute.
“[A] client may at anytime, with or without cause, discharge an attorney.” (Demov, Morris, Levin & Shein v Glantz, 53 NY2d 553, 556 [1981].) As the Court of Appeals has noted, an attorney’s discharge does not in itself imply a lack of competence or diligence on the part of the attorney.
“Attorney-client relationships frequently end because of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by either the client or the lawyer. Others end because of unexpected conflicts of interests or changes in litigation strategy that require different lawyering skills. In some of those situations, the client may ask the attorney to withdraw. In others, it may be the attorney who initiates the termination process by offering to withdraw in order to avoid embarrassment, avert further conflict, preserve the relationship on a long-term basis or simply save the client from the discomfort of having to fire the attorney. Importantly, in many such cases, the decision to terminate the relationship is the product of a mutual choice.” (Klein v Eubank, 87 NY2d 459, 463 [1996].)
“The three remedies of an attorney discharged without cause — the retaining lien, the charging lien, and the plenary action in quantum meruit — are not exclusive but cumulative.” (Levy v Laing, 43 AD3d 713, 715 [1st Dept 2007]; see also Schneider, Kleinick, Weitz, Damashek & Shoot v City of New York, 302 AD2d 183, 186-189 [1st Dept 2002].) “[I]n disputes between attorneys, the discharged attorney may elect to receive *278 compensation based on quantum meruit or on a contingency basis, whereas as against a former client, the discharged attorney is entitled to quantum meruit only, unless the client and attorney agree otherwise.” (Levy v Laing, 43 AD3d at 715.)
The instant dispute concerns only the retaining lien. “A common-law retaining lien, also known as a general possessory lien, entitles the attorney ‘to retain all papers, securities or money belonging to the client’ that come into the attorney’s possession in the course of representation, as security for payment of attorneys’ fees.” (Hoke v Ortiz, 83 NY2d 323, 331 [1994], quoting People v Keeffe, 50 NY2d 149, 155 [1980].) “[A]n attorney’s rendition of services and expenditure of disbursements on behalf of the client entitles him to a common-law retaining lien on the client’s file.” (Theroux v Theroux, 145 AD2d 625, 626 [2d Dept 1988].) “A retaining lien remains in force until the client’s account is paid in full.” {Id.)
The authorities are uniform, however, that “[a] court has discretion ‘to secure the fees and to order the files to be returned to the client before the fees have been paid.’ ” (See Schneider, Kleinick, Weitz, Damashek & Shoot v City of New York, 302 AD2d at 187 n 1, quoting Cosgrove v Tops Mkts., Inc., 39 Fed Appx 661, 664 [2d Cir 2002].) A court may “substitute] the statutory charging lien for the retaining lien with respect to the amount of that fee.” (See Security Credit Sys. v Perfetto, 242 AD2d 871, 872 [4th Dept 1997]; see also Picott v ATA Hous. Corp., 306 AD2d 393, 393 [2d Dept 2003]; Hom v Hom, 210 AD2d 296, 298 [2d Dept 1994].) “A finding of indigence will justify converting the attorney’s retaining lien into a charging lien.” (Cohen v Cohen, 183 AD2d 802, 804 [2d Dept 1992].)
But there appears to be inconsistency on whether the disbursements may be secured. Some courts say that “a court may not order the return of the file before the client has fully paid the attorney’s disbursements.” (See Schneider, Kleinick, Weitz, Damashek & Shoot v City of New York, 302 AD2d at 187 n 1, quoting Cosgrove v Tops Mkts., Inc., 39 Fed Appx at 664; see also Gonzalez v City of New York, 45 AD3d 347, 348 [1st Dept 2007]; Lansky v Easow, 304 AD2d 533, 533 [2d Dept 2003]; Cohen v Cessna Aircraft Co., 56 AD2d 860, 860 [2d Dept 1977].) Other courts say that “[a]bsent evidence of discharge for cause, a court should not order turnover of an outgoing attorney’s file before the client fully pays the attorney’s disbursements or provides security therefore.” (See Warsop v Novik, 50 AD3d 608, 609 [1st Dept 2008] [emphasis added]; see also Tuff & Rumble *279 Mgt. v Landmark Distribs., 254 AD2d 15, 15 [1st Dept 1998]; Manes v Manes, 248 AD2d 515, 516 [2d Dept 1998] [“appropriate undertaking”].) In any event, “[i]f the parties cannot agree on the amount of the disbursements, the court must determine that amount after conducting an expedited hearing.” (Security Credit Sys. v Perfetto, 242 AD2d at 872.)
Here, as noted, the stipulation of the outgoing and incoming attorneys provides for the determination and payment of appropriate compensation to the outgoing attorney at a future time. On the other hand, the stipulation provides for current payment of “disbursements,” without definition or further specification. Neither party suggests that the word “disbursements” as used in the stipulation was intended to have a meaning different from its meaning generally in otherwise applicable law.
Otherwise applicable law, however, does not clearly establish whether the outgoing attorney is entitled to be paid or reimbursed copying charges for reproducing the client’s file before releasing the original to the incoming attorney. Here, the incoming firm provides no authority to support its position that “[s]hould Mr. Pager wish to prepare and retain a copy of the file for his records, he may, but not at our expense.” (Attorney’s affirmation ¶ 7.) The decisions cited by Mr. Pager address the inclusion of copying fees as part of disbursements that are taxed after trial or appeal (see CPLR 8301 [a]; Continental Bldg. Co. v Town of N. Salem, 150 Misc 2d 145, 154 [Sup Ct, Westchester County 1991]; I.F.C. Personal Money Mgrs. v Vadney, 133 Misc 2d 841, 844 [Sup Ct, Albany County 1986]), and are inapposite. Mr. Pager’s primary argument is that he “must maintain a copy of the file, both due to [his] record-keeping obligations and for a variety of other reasons.” (Affirmation in partial opposition ¶ 12.)
For present purposes, and in the first instance, “disbursements” must be understood as amounts “advanced” on behalf of the client. (See Lansky v Easow, 304 AD2d at 533; Madison v Spancrete Mach. Corp., 278 AD2d 867, 868 [4th Dept 2000]; Silverstein v National Auto Renting Corp., 4 AD2d 869, 869 [1st Dept 1957].) But in the only New York decision this court has found that provides insight on the issue, the Court of Appeals has suggested that the outgoing attorney may seek more.
In Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn (91 NY2d 30 [1997]), the Court of Appeals was asked to resolve a dispute between the former counsel for *280 corporate clients and the clients’ successor counsel about material in the clients’ files that successor counsel requested and former counsel refused to deliver. Successor counsel asked former counsel “to turn over its files in their entirety on the financing and restructuring matters, and tendered a check for [former counsel’s] bindery expenses for those transactions, that being the only remaining outstanding claim of [former counsel] for payment with respect to services and disbursements arising out of those matters.” (See id. at 33.)
The Court of Appeals adopted the majority view:
“A majority of courts and State legal ethics advisory bodies considering a client’s access to the attorney’s file in a represented matter, upon termination of the attorney-client relationship, where no claim for unpaid legal fees is outstanding, presumptively accord the client full access to the entire attorney’s file on a represented matter with narrow exceptions.” (See id. at 34, 34-37.)
“Barring a substantial showing by [former counsel] of good cause to refuse client access, [former clients] should be entitled to inspect and copy work product materials, for the creation of which they paid during the course of the firm’s representation.” (Id. at 37 [emphasis added].)
Former counsel, however, “should not be required to disclose documents which might violate a duty of nondisclosure owed to a third party, or otherwise imposed by law.” (Id.) “Additionally, nonaccess would be permissible as to firm documents intended for internal law office review and use.” (Id.) Former counsel could apply for “protective remedies in the event of oppression or harassment in connection with demands for file inspection, delivery of original documents or reproduction.” (See id. at 38.)
As to cost, “as a general proposition, unless a law firm has already been paid for assemblage and delivery of documents to the client, performing that function is properly chargeable to the client under customary fee schedules of the firm, or pursuant to the terms of any governing retainer agreement.” (Id.) The court cautioned generally that its “holding in this matter is not to be construed as altering any existing standard of professional responsibility or generally accepted practice concerning a lawyer’s duty to retain and safeguard all or portions of a client’s file once a matter is concluded.” (See id.)
This court sees no reason why the principles articulated in Sage Realty should not apply generally to issues about client *281 files. This court notes, as did the Court of Appeals, that “often, no unequivocal line can be drawn between pending and completed legal matters.” (See id. at 36.) Although here there is no issue about “assemblage and delivery,” Sage Realty’s allowance of the billing of such costs to the client when the file is requested upon or after the conclusion of the representation clearly suggests that a client may be billed costs that are not “advanced” during and in furtherance of the representation. Although Sage Realty does not address copying costs in terms, certain of its language, quoted above, further suggests that those costs may be billed as well.
This court has found only one bar association ethics opinion that addresses copying costs on disposition of client files. In that opinion, the New York State Bar Association Committee on Professional Ethics concluded that “[a] lawyer may generally retain copies of documents in the client’s file at the lawyer’s own expense, even over the client’s objection.” (See NY St Bar Assn Comm on Prof Ethics Op 780 [2004], Retaining Copies of Client’s File Over Client’s Objection; Limitation of Attorney Liability, 2004 WL 3021155, *2 [Dec. 8, 2004].) But unlike other bar association opinions that deal with retention and disposition of client files, the State Bar Association Committee opinion does not recognize that a lawyer is required by ethical and other court rules to retain certain documents. (See Assn of Bar of City of NY Comm on Prof and Jud Ethics Formal Op 2008-1 [2008], A Lawyer’s Ethical Obligation to Retain and to Provide a Client With Electronic Documents Relating to a Representation, 2008 WL 3911383, *1-2 [July 2008]; NY County Lawyers’ Assn Comm on Prof Ethics Op 725 [1998], Retention of Closed Client Files/Papers, 1998 WL 707703, *2 [1998]; NY St Bar Assn Comm on Prof Ethics Op 623 [1991], Closed Files; Disposition Procedures; Dissolution of Law Firm, 1991 WL 341388, *2 [Nov. 7, 1991]; Assn of Bar of City of NY Comm on Prof and Jud Ethics Formal Op 1986-4 [1986], 1986 WL 293093, *1 [Apr. 30, 1986]; NY St Bar Assn Comm on Prof Ethics Op 460 [1977], Preservation of Closed Files, 1977 WL 15688, *1 [Feb. 28, 1977].)
Where the lawyer is “subject to an independent duty of retention” by ethical or other court rule, the lawyer “cannot satisfy his ethical obligations by delivering such documents to the client for safekeeping along with the client’s file”; “[t]he lawyer should keep them himself.” (See NY County Lawyers’ Assn Comm on Prof Ethics Op 725, 1998 WL *282 707703, *2.) Similarly, “where the lawyer is personally responsible for the preservation of the documents in question . . . , ordinarily the lawyer will not be able to discharge the legal obligation to maintain them by transferring their possession to the client.” (See NY St Bar Assn Comm on Prof Ethics Op 623, 1991 WL 341388, *2.)
New York’s Disciplinary Rules require lawyers to “maintain for seven years after the events which they record” specified “bookkeeping records,” including copies of all retainer and compensation agreements with clients, all statements to clients, and all bills rendered to clients. (See Code of Professional Responsibility DR 9-102 [d] [22 NYCRR 1200.46 (d)].) The Rules of the Appellate Division, First Department, and Second Department, also require the maintenance of the specified “bookkeeping records.” (See 22 NYCRR 603.15, 691.12.) In addition, with respect to specified claims or actions, including those for personal injury, property damage, or wrongful death due to negligence, the Rules of the Second Department requires that “ [attorneys for both plaintiff and defendant. . . shall preserve, for a period of seven years” virtually the entire file of the attorney. (See 22 NYCRR 691.20 [f].) Specifically, the retention requirement includes
“the pleadings and other papers pertaining to such claim or cause of action, including, but not limited to, letters or other data relating to the claim of loss of time from employment or loss of income; medical reports, medical bills, X-ray reports, X-ray bills; repair bills, estimates of repairs; all correspondence concerning the claim or cause of action; and memoranda of the disposition thereof as well as canceled vouchers, receipts and memoranda evidencing the amounts disbursed by the attorney to the client and others in connection with the aforesaid claim or cause of action.” (Id.)
Neither the Disciplinary Rules nor the Rules of the Second Department make any exception to the retention requirements where the attorney withdraws from representation or is discharged. As to the “bookkeeping records,” however, the applicable Disciplinary Rule provides that, upon dissolution of a law firm, “the former partners or members shall make appropriate arrangements for the maintenance by one of them or by a successor firm of the [bookkeeping] records.” (See Code of Professional Responsibility DR 9-102 [h] [22 NYCRR 1200.46 (h)].) “A lawyer, upon termination of his practice may properly *283 cause the closed files to be delivered to another lawyer, but the receiving lawyer will hold them only as custodian.” (See NY St Bar Assn Comm on Prof Ethics Op 460, 1977 WL 15688, *2.) In any event, the obligations of a lawyer upon termination of a practice and a lawyer continuing in practice would, presumably, be different.
In short, there is no clear authority as to whether a charge for copying the client’s file is appropriate as a “disbursement” for purposes of a retaining lien, or whether for purposes of general ethical obligations a lawyer may charge for copying a file before releasing it to the client or the client’s designated recipient. Although the two questions are different, no reason presents itself for providing different answers.
The Court of Appeals decision in Sage Realty (91 NY2d 30 [1997]) is sufficient authority that, upon the termination of representation, at least where the lawyer has not been discharged for cause, or improperly withdrawn, the lawyer may fairly charge the client for the reasonable cost of complying with the client’s request for the file. And where the file includes material that the lawyer is required by ethical or other court rule to maintain, a reasonable cost of copying the file for the lawyer’s records is not inappropriate. Again, there is nothing in the rules or case law that releases a lawyer from the obligation to retain specified documents when the client’s file is released to the client or another law firm. The failure to maintain client files in violation of court rules is sanctionable conduct. (See Matter of Dahowski, 103 AD2d 354, 354-355 [2d Dept 1984].)
Here, plaintiff’s claim for personal injury falls within the scope of the Rules of the Second Department that require that virtually the entire file be maintained for a period of seven years after resolution. Payment of the reasonable cost of copying the file could be charged to the client as a condition to a release of the client’s file to incoming counsel.
Which is not to say that a charge of $.75 per page is reasonable. Mr. Pager attempts to justify the charge by citation to a provision of the Public Health Law that allows persons access to the records maintained on them by health care providers. The statute allows the provider to “impose a reasonable charge for all inspections and copies, not exceeding the costs incurred by such provider,” but “the reasonable charge for paper copies shall not exceed seventy-five cents per page.” (See Public Health Law § 18 [2] [e].) The statute clearly does not establish $.75 per *284 page as the reasonable cost of copying. Even though incoming counsel does not specifically challenge the amount of the charge, it is not so reasonable on its face as to warrant its acceptance without a hearing.