2009 Ark. 188

**Thomas Lewis TRAVIS, Appellant,**

v.

**SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT, Appellee.**

**No. 08–1341.**

Supreme Court of Arkansas.

April 9, 2009.

**4**

Thomas Lewis Travis, pro se.

Stark Ligon and Nancie M. Givens, Office of Professional Conduct, for appellee.

ROBERT L. BROWN, Justice.

▮ |₁Appellant Thomas Lewis Travis appeals from a decision of the Arkansas Supreme Court Committee on Professional Conduct ("Committee") finding him in violation of Rule 1.16(d) of the Arkansas Rules of Professional Conduct and reprimanding him and ordering him to pay costs in the amount of $350 and a fine in the amount of $1000.

The record reflects that Travis represented J. Matilde Martinez in various legal matters beginning in 2001.[1] In 2005, Travis's representation of Martinez ceased. Sometime later, Martinez retained the legal services of Misty Borkowski. On April 4, 2007, Borkowski sent Travis a letter, stating that she had been retained by Martinez and his business, Twin Brother I.N.C. The letter asked Travis for "any and all of [Martinez's] files, personal and/or |₂business, specifically, but not limited to" six immigration petitions Martinez had filed on behalf of three family members and three workers. Attached to the letter was a signed authorization from Martinez for the release of his personal and business files. Travis did not respond. Travis also did not respond to Borkowski's telephone calls on Martinez's behalf.

On May 18, 2007, Borkowski hand delivered a copy of her April 4, 2007 letter to Travis's office and visited with him. During the visit, Travis informed Borkowski that it was his law firm's policy not to provide his clients with their files and that

**1.** Travis's representation of Martinez consisted primarily of immigration matters but also included general legal matters, including the incorporation of Martinez's business.

she should get the documents from Martinez because Travis had sent him the various orders and petitions at the time of their filing. Travis did agree to provide Borkowski with approval notices and final disposition notices from the various immigration matters. On June 19, 2007, having not received any of Martinez's documents, Borkowski sent another letter to Travis. In this letter, Borkowski memorialized her May 18, 2007 conversation with Travis and demanded that Travis release Martinez's file immediately. After Travis failed to comply with her demand, Borkowski and Martinez contacted the Office of Professional Conduct ("the Office").

Stark Ligon, the Executive Director of the Office, contacted Travis about Borkowski's problem in obtaining the Martinez file. In a letter dated September 24, 2007, Travis responded that it was his "longstanding practice and policy" that the files in his law office were his property. He claimed that the contents of Martinez's file were his work product to which Martinez was not entitled. Travis further wrote that "[c]opies of applications, notices received from USCIS, orders from Immigration Court, etc. were provided to [Martinez] at the time prepared and signed . . . or whenever received from the agency or court." The following month, Travis provided a few documents from his file to Borkowski, including two approval notices concerning Martinez's wife and mother and "a couple of personal papers."

On January 28, 2008, Travis was served with a formal disciplinary complaint filed by the Committee and supported by affidavits from Martinez and Borkowski. The complaint alleged that he had violated Arkansas Rule of Professional Conduct 1.16(d) by failing to surrender papers and property to which Martinez was entitled after their professional relationship was terminated. Travis responded and maintained that Martinez already possessed everything to which he was entitled and that anything else in the file was his attorney work product and property; that the file did not contain any of Martinez's original documents or property; and that "if new counsel does not know what to put on any new applications, and she is afraid of conflicting information, I can advise that I always put the truth, as it was told to me by Mr. Martinez."

Travis also filed a personal affidavit with his answer in which he raised the issue of whether he had an obligation to protect the personal information of the individuals on whose behalf Martinez had filed the six immigration petitions. In addition, he asserted that Borkowski could obtain any information she needed from the U.S. Citizenship and Immigration Services, the Little Rock Immigration and Customs Enforcement Office, or through a freedom of information request. Borkowski filed a response as the complaining witness in which she claimed that "the only real issue is for [Martinez] to obtain a copy of files regarding his business and personal immigration matters," and that "[f]ocus should be on [Travis's] refusal to provide the files and not the idiosyncrasies of immigration law."

In April 2008, Panel B of the Committee considered the formal complaint, Travis's response, and Borkowski's rebuttal and concluded by ballot vote that Travis's conduct violated Rule 1.16(d). Travis then exercised his right to a de novo public hearing before a different panel of the Committee under section 10.D.3 of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law. On July 18, 2008, the requested hearing was held before Panel A of the Committee. At the hearing, Panel A heard the testimony of Travis, Borkowski, and Martinez. On July 29, 2008, the panel filed its findings and order with the

Clerk of the Arkansas Supreme Court, in which the panel found Travis in violation of Rule 1.16(d) of the Arkansas Rules of Professional Conduct. The panel then reprimanded him and ordered him to pay costs in the amount of $350 and a fine in the amount of $1000.

Travis now contends on appeal that the Committee erred in finding that his conduct violated Rule 1.16(d) of the Arkansas Rules of Professional Conduct. Travis argues, initially, that the immigration matters that he handled for Martinez involved "dual representation" and that he had a duty of loyalty and a duty of confidentiality to the six individuals on whose behalf Martinez petitioned. Next, Travis claims that Martinez had already received everything to which he was entitled because he was provided with copies of all of the documents prepared on his behalf, including the end products, during the course of his representation. Plus, he maintains that all of Martinez's original documents were copied and returned to him. Travis points out that he does not maintain a file on Martinez's behalf and the only documents in the file that he has not previously turned over consist of copies, internal notes, and research that he considers his work product. As a final matter, he emphasizes that he has taken the necessary steps to protect Martinez's interests and that it has not been alleged that he was negligent in his representation or that he left any matter unfinished.

The Office responds that Rule 1.16(d) does not require a problem with an attorney's work or that a matter be incomplete as a prerequisite to the lawyer's duty to return a client's file. The Office asserts that the Committee's finding was not clearly erroneous because it was undisputed that Travis's representation of Martinez had ceased, and when asked to provide the contents of Martinez's file, Travis refused.

Responding to Travis's argument that because he provided the documents once during the course of his representation he no longer had a duty to provide duplicates, the Office argues that the attorney, and not the client, has the duty to maintain files and documents and that this requirement goes hand in hand with the privilege of practicing law. The Office adds that Travis's argument ignores the fact that Martinez paid for the documents in the file. As a final point, the Office notes that the problem with Travis's "dual representation" argument is that he openly admits that he provided the immigration documents to Martinez on behalf of family members and workers at the time they were filed. In addition, he refused to provide any legal documents to Martinez upon request on matters unrelated to the immigration petitions.

This court reviews a decision of the Committee de novo on the record and pronounces judgment as if its opinion were that of the Committee. Procedures Regulating Prof'l Conduct of Attorneys § 12.B; *Cortinez v. Supreme Court Comm. on Prof'l Conduct*, 332 Ark. 456, 966 S.W.2d 251 (1998). This court will not reverse the Committee's action unless its findings were clearly erroneous. *Arens v. Comm. on Prof'l Conduct*, 307 Ark. 308, 820 S.W.2d 263 (1991). The Committee is in a superior position to determine the credibility of the witnesses and weigh the preponderance of the evidence. *Colvin v. Comm. on Prof'l Conduct*, 309 Ark. 592, 832 S.W.2d 246 (1992).

In the instant case, Travis does not dispute the fact that he failed to provide Martinez with the documents from his file upon request. Instead, he offers several reasons for why he believes he was not required to do so. He also urges this court to define what a client is entitled to under Rule 1.16(d) and, specifically, what

is encompassed by the term "papers and property."

We turn then to the language of Rule 1.16(d):

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Arkansas Rules of Prof'l Conduct 1.16(d) (2008).

Other states have adopted two general approaches that offer guidance for when a client is entitled to his or her file after termination of representation. The first is the "entire file" approach, which is followed by the majority of jurisdictions. Under this approach, the client is presumptively entitled to everything in his or her own file, including the attorney's work product, subject to certain narrow exceptions. *See, e.g., Iowa Supreme Court Attorney Disciplinary Bd. v. Gottschalk,* 729 N.W.2d 812 (Iowa 2007) (attorney's conduct violated a rule providing that "a lawyer shall promptly deliver to the client or third person any funds or other property" that the client is entitled to receive); *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.,* 91 N.Y.2d 30, 666 N.Y.S.2d 985, 689 N.E.2d 879 (1997) (civil action between firm and its former client over right to client's papers where court looked to other states interpreting their rules).

The Restatement (Third) of the Law Governing Lawyers has endorsed the "entire file" approach: "On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse." The Restatement (Third) of the Law Governing Lawyers § 46(2). Comment *c* to this section makes it clear that this right extends not only to documents placed in the lawyer's possession but also to "documents produced by the lawyer." The Restatement further provides several exceptions to this rule, noting that a lawyer may refuse disclosure when compliance would violate the lawyer's duty to another, when the lawyer is protecting the interests of the client, or when the documents were reasonably intended only for internal review.

The second approach is the "end product" approach, which has been adopted by a minority of jurisdictions. Under this analysis, a client is entitled to documents that are the end product of an attorney's representation, including pleadings, correspondence, and other documents "exposed to public light" by the attorney in furtherance of the client's interests. *Gottschalk,* 729 N.W.2d at 820 (citing *Sage Realty Corp.,* 666 N.Y.S.2d 985, 689 N.E.2d at 881 (quoting *Fed. Land Bank v. Fed. Intermediate Credit Bank,* 127 F.R.D. 473, 479 (S.D.Miss.1989))). Under an "end product" analysis, a client is not entitled to the attorney's work product, which includes the documents the attorney used " 'to reach the end result,' such as internal legal memoranda and preliminary drafts of pleadings and legal instruments." *Sage Realty Corp.,* 666 N.Y.S.2d 985, 689 N.E.2d at 882 (quoting *Fed. Land Bank,* 127 F.R.D. at 479). This view holds that the client is only entitled to access the attorney's work product "to the extent of a demonstrated need in order to understand the end product documents, with the burden of justification on the client." *Sage Realty Corp.,* 666 N.Y.S.2d 985, 689

N.E.2d at 882 (citing *Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus,* 824 S.W.2d 92 (Mo.App.1992)).

We further note that some states provide specific guidance to attorneys on what must be turned over to the client. For example, a comment to the North Carolina Rules of Professional Conduct provides:

> Generally, anything in the file that would be helpful to successor counsel should be turned over. This includes papers and other things delivered to the discharged lawyer by the client such as original instruments, correspondence, and canceled checks. Copies of all correspondence received and generated by the withdrawing or discharged lawyer should be released as well as legal instruments, pleadings, and briefs submitted by either side or prepared and ready for submission. The lawyer's personal notes and incomplete work product need not be released.

N.C. State Bar Revised Rules of Prof'l Conduct, Rule 1.16, Comment 10 (2006).

Arkansas has not formally adopted either the "entire file" or the "end product" approach, but that fact is not determinative for a resolution of this case. Here, Travis's conduct violates either approach because he failed to provide Martinez with even the end product of his representation and argued in his defense that because he provided the documents once during the course of his representation, he no longer had a duty to provide duplicates.

In *Resolution Trust Corp. v. H——, P.C.,* 128 F.R.D. 647, 650, (N.D.Tex.1989), the United States District Court interpreted a Texas rule that provided that a lawyer must "promptly pay or deliver to the client as requested by a client, . . . other properties in the possession of the lawyer which the client is entitled to receive." In that case, the court rejected the same duplicates argument offered by Travis and, in doing so, said:

> An attorney is hired to represent the interests of his client, and every service provided by the attorney, including the creation of legal memoranda and attorney's notes and the copying of documents, is paid for by the client. To allow the attorney to decide which materials may or may not be revealed to the client from its files would deny the client the full benefit of the services for which he paid, often dearly. Even more important, giving such a power to an attorney would fundamentally undermine the fiduciary nature of the relationship between an attorney and a client.

*Resolution Trust Corp. v. H——, P.C.,* 128 F.R.D. 647, 650, (N.D.Tex.1989). We reject Travis's duplicates argument because it fails to acknowledge that the client paid for the documents in the file. Nor do we believe that it is the client's duty to maintain a file on his or her own behalf. This court has previously held that Rule 1.16(d) "places an affirmative duty on the attorney, not the client, to protect the client's interests upon termination of representation." *Cortinez,* 332 Ark. at 466, 966 S.W.2d at 256.

Travis further claims that he has taken the necessary steps to protect Martinez's interests and that it has not been alleged that he was negligent in his representation or that he left any matter unfinished. Thus, he seeks to distinguish his conduct from that of the attorneys found to be in violation of Rule 1.16(d) in *Arens v. Committee on Professional Conduct,* 307 Ark. 308, 820 S.W.2d 263 (1991), and *Cortinez v. Supreme Court Committee on Professional Conduct,* 332 Ark. 456, 966 S.W.2d 251 (1998). And yet, the plain language of Rule 1.16(d) places a duty on an attorney to surrender the papers and property to which the client is entitled upon termination of representation irrespective of negligent conduct or the fact

that the representation has been complet-·ed. As the Office notes, nothing in the rule requires as a condition some problem with an attorney's work or negligent performance or that a matter be complete or incomplete before the duty to return a client's files can be imposed. Indeed, this court in *Arens* and *Cortinez* did not provide for such a requirement.

With respect to Travis's dual representation argument, we agree with the Office that this argument is unavailing. Travis's representation of Martinez did not consist solely of immigration matters on behalf of third-party beneficiaries but included Martinez's personal naturalization and citizenship matters as well as other general legal matters such as the incorporation of Martinez's business. Yet, Travis refused to provide *any* documents to Martinez upon request. Furthermore, it is undisputed that Travis provided copies of the immigration documents to Martinez at the time they were filed and provided two approval notices concerning Martinez's wife and mother in October 2007. In light of these facts, we agree with the Office that Travis's "dual representation" argument is an attempt at an after-the-fact justification for his refusal to release Martinez's file when he had made partial release of information previously.

Though having in place a specific comment to Rule 1.16(d) offering guidance under either the "entire file" approach or the "end product" approach is not essential for the resolution of the instant case, we commend the two approaches to our Professional Conduct Committee for its evaluation and study, looking toward the desirability of adopting either approach as a comment to Rule 1.16(d).

Affirmed.