Opinion filed June 12, 2014



In The

# Eleventh Court of Appeals

—————————

## No. 11-12-00165-CR

—————————

## TRAVIS LEE WILLIAMS, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR37863**

### M E M O R A N D U M   O P I N I O N

Appellant, Travis Lee Williams, appeals his conviction of aggravated assault with a deadly weapon. Appellant pleaded true to the enhancement paragraph, and the jury assessed punishment at confinement for thirty years and a fine of $3,000. Based upon the verdict of the jury, the trial court affirmatively found that Appellant used or exhibited a deadly weapon and sentenced him accordingly. In a single issue on appeal, Appellant challenges the sufficiency of the evidence to support his conviction. We affirm.

Appellant went to a bar in Midland called Fast Freddy's where he and some friends played pool. Appellant and Ronnie Snyder played a game where the player punches a bag and the machine indicates how hard the player punched. Joe Vargas and his friend Randell Charles Phil Collins joined the game and took turns playing it with Appellant and Snyder. The men agreed that the loser of each round would pay $1 for the next game. When the bet increased to $20, Vargas won and decided to quit playing while he was ahead, but the other men wanted a chance to win the $20 back. Collins went outside to talk to his wife Kayla, and someone came outside and said Vargas needed his help. When Collins went back inside, he saw one of the men from the punching game holding Vargas back, but he did not see anyone punching or stabbing Vargas. The bartender threatened to call the police, and Collins and Vargas left through the front door. When they got outside, Kayla saw blood on Vargas's shirt and started screaming that he had been stabbed. Vargas passed out, and Kayla called 911.

Emergency medical personnel arrived and took Vargas to the hospital, and police officers secured the scene. Midland Police Detectives Kay Therwhanger and Rosie Rodriguez arrived and interviewed witnesses. None of the witnesses saw the stabbing or a knife. Witness Christina Gonzales saw two men enter Fast Freddy's; they appeared to be looking for someone. She said that one of the men was wearing a white shirt and the other was wearing a black cap. Although Gonzales did not see the fight, she saw the man in the white shirt exit through the back door after the fight. Officers found and photographed a shoe print behind the building. Snyder had outstanding warrants and was arrested. After Detective Therwhanger obtained Appellant's name through an interview with Snyder, she sent patrol officers to Appellant's duplex at 3122 West Kansas. Detective Rodriguez conducted a photo lineup at the hospital, and without hesitation, Vargas

identified Appellant as being involved in the fight. But Vargas could not say who had stabbed him.

When officers arrived at Appellant's residence, two officers approached the front door while two officers watched the back door. When Officer Blake Bush knocked on the front door, Officer Kenneth Angell and his partner saw Appellant open the back door very quietly, discreetly close the door, and start running at a full sprint. Officer Angell testified that, when they announced that they were police officers and yelled for Appellant to stop, Appellant immediately put his hands in the air and lay on the ground. Appellant was arrested.

In his recorded statement to police, Appellant admitted that he and Snyder were in a fight at Fast Freddy's. According to Appellant, Snyder and Vargas were arguing, and as they were about to fight, Appellant grabbed Vargas from behind. Appellant told detectives that, when Vargas turned and grabbed Appellant's shirt, Appellant "just reacted." Detective Therwhanger asked Appellant what he did after Vargas grabbed his shirt, and Appellant said, "Honestly, I think I took a knife to him." Appellant said that he carries a pocket knife. Detective Therwhanger asked Appellant whether he took his knife out of his pocket and stabbed Vargas, and Appellant said, "I think." But when asked how many times, Appellant said, "I have no idea." Appellant did not believe that the victim had a weapon. Appellant told the detective that he wiped blood on the white T-shirt that he was wearing, took off the shirt, and hid it near Fast Freddy's. Appellant also told Detective Therwhanger that, when he exited through the rear of the building, he dropped the knife outside; he described the knife as having a black handle and a Kershaw blade. Appellant drew a map and showed the detective where he dropped the knife and where he hid the white T-shirt.

Appellant said that he took off the jeans he had been wearing when he got home, and he gave consent for officers to retrieve those jeans from his bedroom.

Officers found blood on the jeans and the shoes that Appellant had been wearing. Appellant's wallet and driver's license were still in the pocket of those jeans, and the pattern from his shoe was "similar to the pattern that [was] photographed in the alley behind the building."

In his sole issue on appeal, Appellant does not question the sufficiency of the evidence with respect to the assault itself, but he contends that he was not shown to be the person who committed the assault. Specifically, Appellant argues that, although the eyewitnesses identified Appellant as being involved in the fight, "no witness could identify appellant as having stabbed anyone that night at Fast Freddy's." Appellant concedes that, while his statement to police indicates that he stabbed the victim, "this statement was made in the context of appellant's continued assertion that he could not remember what happened on the night in question." Appellant admits that he told police where to find the knife, but he argues that "no effort was ever made to connect this knife with the crime in question."

When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012). This standard requires us to defer to the jury to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences to reach ultimate facts. *See Jackson*, 443 U.S. at 316; *Gross*, 380 S.W.3d at 185. The jury is the sole judge of the credibility of the witnesses, and it is free to accept or reject any or all of a witness's testimony. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Identity may be proven "by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d

4

274, 285 (Tex. Crim. App. 2009). Circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

Appellant is correct that none of the witnesses unequivocally identified him as the person who stabbed Vargas. However, Appellant admitted in his recorded statement that he "took a knife to him." An eyewitness saw a man with a white shirt leave through the rear exit after the fight, and Appellant admitted that he left through the rear exit, dropped the knife, and hid his white T-shirt. While the blood on the knife was not tested to determine if it matched Vargas's, the knife and white T-shirt were found where Appellant told the officer's to search. There was blood on the jeans, shirt, and shoes that Appellant was wearing during the fight, and his shoe print was similar to the one found near the rear exit of the building. Moreover, the jury could have found that Appellant committed the assault from the fact that he ran from police when they arrived at his home. *See Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994) ("Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn.").

Viewing all the evidence in the light most favorable to the verdict, the jury could have rationally concluded beyond a reasonable doubt that Appellant was the person who stabbed the victim. Appellant's sole issue on appeal is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT

June 12, 2014                                      CHIEF JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

5