## Goldstein, Rikon, Rikon & Levi, P.C. v 35 Delevan Owners LLC

2023 NY Slip Op 34583(U)

December 18, 2023

Supreme Court, Kings County

Docket Number: Index No. 513884/2022

Judge: Ingrid Joseph

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Part 83 of the Supreme Court of the State of New York held in and for the County of Kings at 360 Adams Street, Brooklyn, New York, on the 18th day of December 2023.

PRESENT: HON. INGRID JOSEPH, J.S.C.
SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF KINGS
-----------------------------------------------------------------------X

GOLDSTEIN, RIKON, RIKON & LEVI, P.C.,

Plaintiff(s)

-against-

35 DELEVAN OWNERS LLC and HARBOR TECH LLC,
And NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY,

Defendant(s)
-----------------------------------------------------------------------X

**Index No**: 513884/2022

**ORDER**

The following e-filed papers read herein:
Notice of Motion/Affirmation in Support/Affidavits Annexed
Exhibits Annexed/Reply………..
Affirmation in Opposition/Affidavits Annexed/Exhibits Annexed…………

NYSCEF Nos.:

10-21; 33
22-31

In this matter, New York City School Construction Authority ("SCA" or "Defendant") moves (Motion Seq. 1) for an order pursuant to CPLR §§ 3211(a)(1) and (a)(7) dismissing Goldstein, Rikon, Rikon, & Levi, P.C.'s ("Goldstein" or "Plaintiff") Verified Complaint with prejudice on the ground that Plaintiff has failed to state a viable cause of action against SCA. Plaintiff has opposed the motion.

Plaintiff commenced this action on May 12, 2022, to recover legal fees purportedly owed for legal services it rendered to former clients, Defendants 35 Delevan Owners LLC ("35 Delevan") and Harbor Tech LLC ("Harbor"). In its Verified Complaint, Plaintiff alleges that Defendants 35 Delevan and Harbor retained Plaintiff's predecessor-in-interest, Goldstein, Rikon, Rikon, & Houghton, P.C. to obtain just compensation for Defendants 35 Delevan and Harbor in connection with SCA's acquisition of and/or the condemnation of two properties located at 21-31 and 35 Delevan St. Brooklyn, New York 11231 (the "Subject Premises"). Plaintiff contends that the retainer agreement between 35 Delevan, Harbor, and Plaintiff's predecessor-in-interest and its charging lien now entitles Plaintiff to a contingency fee based on a percentage of all amounts received from SCA, "whether by award, suit, purchase, settlement, supplemental advance payment, or otherwise including interest." Plaintiff asserts causes of action for breach of contract, breach of duty of good faith and fair dealing, entitlement to an attorney's lien on proceeds of settlement pursuant to Judiciary Law 475 and for a constructive bailment as to SCA.

In its Verified Complaint, Plaintiff alleges that it was retained by Defendants 35 Delevan and Harbor on October 16, 2018, as evidenced by the parties' Engagement Letter and Retainer Agreement. The Verified Complaint states that SCA made a pre-vesting offer to purchase the Subject Premises for

1

[* 1]

$18,300,000.00, which was rejected by Plaintiff on behalf of its former clients via letter dated February 28, 2019. On December 8, 2020, Plaintiff's predecessor-in-interest and 35 Delevan signed an acknowledgement letter wherein it states that "35 Delevan Owners LLC is changing its name to 21 and 35 Delevan LLC, that this is a change in name only, not ownership, that 21 and 35 Delevan LLC Hereby Agrees to Retain Goldstein, Rikon, Rikon & Houghton, and agrees to be bound by the Retainer Agreement signed by 35 Delevan Owners LLC on October 16,2018 and consents and agrees to all Terms and Conditions therein." Furthermore, Plaintiff alleges that through its ongoing efforts, SCA increased its purchase offer to $32,000,000.00, which Plaintiff accepted on behalf of its former clients in March of 2022. However, on April 8, 2022, 35 Delevan and Harbor terminated Plaintiff's representation and requested that their files be transferred to the firm Carter Ledyard & Milburn LLP. On April 8, 2022, Plaintiff states that it informed counsel at the newly appointed firm that no files would be transferred until Plaintiff's attorney's lien is satisfied. On April 11, 2022, Plaintiff sent counsel and SCA a copy of a Notice of Lien and an Amended Notice of Lien and informed counsel that the lien would be released upon payment of $1, 844, 149.27 for legal fees and expenses. The Verified Complaint also states that on April 21, 2022, Plaintiff sent a copy of the Amended Notice of Lien to Lex Terrae Ltd., which upon information and belief is the title company that has been hired by SCA to handle the transfer of the Subject Premises from 35 Delevan and Harbor to SCA. On May 17, 2022, "21 and 35 Delevan LLC" and "SCA: entered into a Purchase and Sale Agreement for the Subject Premises. On May 26, 2022, a Closing Settlement Statement was signed by the parties and issued by Old Republic National Commercial Title Services.

In support of its motion, SCA argues that Plaintiff has failed to assert a viable cause of action for a constructive bailment or for entitlement to a charging lien because Plaintiff never had any right or interest in SCA's money either before or after it purchased the property from 35 Delevan and Harbor. SCA states that 35 Delevan and Harbor, who were the former owners of the Subject Premises, terminated Plaintiff for cause on April 8, 2022, after learning that Plaintiff was simultaneously representing a tenant of 35 Delevan and Harbor in relation to the property, and that that while new counsel was in the process of negotiating the terms of a potential sale, Plaintiff initiated this action. With respect to Plaintiff's claim for entitlement to a charging lien, SCA argues that no automatic lien arose under Judiciary Law § 475 because there can be no liability to a third-party under the statute without the commencement of an action or proceeding by an attorney at the time the attorney's services were rendered so as to invoke the jurisdiction of the court over a third-party. SCA asserts that Plaintiff "merely responded to a pre-vesting offer made by SCA," which it rejected on February 28, 2019.

Additionally, SCA claims that the 2012 amendment of Judiciary Law § 475 was not intended to allow an attorney who provided pre-litigation services to bypass the requirements to formally serve a Notice of Lien on a third-party so that a court may acquire jurisdiction over the third party pursuant to

2

[* 2]

companion statute Judiciary Law § 475-a. Moreover, SCA states that Plaintiff's lien notices are defective pursuant to Judiciary Law § 475-a because (1) they were sent by regular mail, (2) they failed to state any established attorney-client relationship, and (3) they were not signed by Plaintiff's clients nor witnessed by a disinterested person.

With respect to Plaintiff's constructive bailment claim, SCA argues that Plaintiff has failed to assert any facts, which, if true, would have created a constructive bailment or made the SCA its constructive bailee. SCA asserts that that the money over which Plaintiff claims a constructive bailment was the SCA's own property and was used after the lawsuit was filed to purchase the Property from 35 Delevan and Harbor. SCA argues that to the extent that Plaintiff claims a right to a portion of the money paid for the sale, under the plain terms of its retainer agreement with 35 Delevan and Harbor, that right can only have arisen after the closing once the money was paid to the 35 Delevan and Harbor. SCA claims that it never held any money claimed by Plaintiff and that the Purchase and Sale Agreement establishes that the title company apportioned any amounts owed to third-parties out of the purchase. SCA states the lien notices are also insufficient to create a constructive bailment because Plaintiff's interest in the funds did not vest until the funds were paid to the 35 Delevan and Harbor, therefore, Plaintiff could not have had any lien on the purchase price or SCA's money until after it left SCA's hands. SCA submits affidavits of Elliot Neumann ("Neumann"), an authorized signatory for 35 Delevan and Harbor and Edward Perez ("Perez"), senior attorney of SCA, wherein parties merely state that copies of submitted documents are annexed as exhibits.

In opposition, Plaintiff argues that it has asserted viable causes of actions because SCA did hold a fund of money, which constituted as Plaintiff's property, and had a charging lien on it, and that because SCA wrongfully disposed of the entire fund without paying Plaintiff or reserving money to cover Plaintiff's liens, it violated its obligations as bailee of the fund. Plaintiff states that under Judiciary Law § 475 charging liens arise either when a lawyer appears in a proceeding or when a lawyer begins negotiating a settlement of dispute. Plaintiff contends that it obtained a charging lien not only by appearing on behalf of 35 Delevan and Harbor in SCA's condemnation proceeding, but also by negotiating the dispute between its former clients and SCA, wherein SCA purchased the Subject Premises in lieu of condemnation. Plaintiff claims that SCA began the condemnation proceeding pursuant to Article 2 of the Eminent Domain Procedure Law in July of 2021, by issuing a Notice of a Public Hearing which, Plaintiff received and attended on August 14, 2019. Furthermore, Plaintiff claims that SCA issued a Determination of Findings in November of 2019, wherein SCA made the initial decision to exercise its condemnation power over the property. However, SCA ultimately increased its purchase offer to $32,000,000.00, which Plaintiff accepted on behalf of its former clients before being terminated. Plaintiff maintains that payment of the purchase price of the property through a title company did not extinguish

[* 3]

its lien and that SCA's argument that its lien notices were defective is immaterial because Plaintiff is not moving under Judiciary Law § 475-a but under Judiciary Law § 475, which does not require notice. Thus, Plaintiff claims it has established entitlement to a charging lien in its favor in any fund created for its former client, which attached the moment the settlement was agreed upon. With respect to Plaintiff's claim for a constructive bailment, Plaintiff argues that because SCA is holding $1,844,149.28 under circumstances where the law imposes a duty upon SCA to deliver it to Plaintiff, that Plaintiff has a viable cause of action against SCA.

Upon a motion to dismiss pursuant to CPLR § 3211 (a)(1), dismissal is warranted where documentary evidence refutes plaintiff's factual allegations and establishes a defense as a matter of law (*Leon* at 88; *Goshum v Mutual Life Ins. Co. of New York,* 98 NY2d 314 [2002]; *Brio v Roth,* 121 A.D.3d 733 [2d Dept. 2014]).To constitute documentary evidence, the evidence must be "unambiguous, authentic, and undeniable," such as judicial records and documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other papers, the contents of which are essentially undeniable (*Granada Condominium III Assn. v. Palomino,* 78 A.D.3d 996 [2d Dept. 2010]; *Prott v. Lewin & Baglio, LLP,* 150 AD3d 908 [2d Dept 2017]). An affidavit is not documentary evidence because its contents can be controverted by other evidence, such as another affidavit (*Xu v Van Zqienen,* 212 A.D.3d 872 [2d Dept. 2023]; *Phillips v Taco Bell Corp.,* 152 A.D.3d 806 [2d Dept. 2017]; *Fontanetta v John Doe 1,* 73 A.D.3d 78 [2d Dept. 2010]).

Where documentary evidence contradicts the allegations of the complaint, the court need not assume the truthfulness of the pleaded allegations (*West Branch Conservation Assn, Inc., v County of Rockland,* 227 A.D.2d 547 [2d Dept. 1996]; *Greene v Doral Conference Center Associates,* 18 A.D.3d 429 [2d Dept. 2005]); *Penato v. George,* 52 A.D.2d 939, 941 [2d Dept 1976]). Allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration (*Connaughton v Chipotle Mexican Grill, Inc.,* 29 N.Y.3d 137 [2017]; *Duncan v Emeral Expositions LLC,* 186 A.D.3d 1321 [2d Dept. 2020]; *Dinerman v Jewish Bd. of Family & Children's Services Inc.,* 55 A.D.3d 530 [2d Dept. 2008]; *Nisari v. Ramjohn,* 85 A.D.3d 987, 989 [2d Dept 2011]). The defendant bears the burden of demonstrating that the proffered evidence "conclusively refutes plaintiff's factual allegations (*Guggenheimer v Ginzburg,* 43 NY2d 268 [1977]; *Kolchins v Evolution Mkts. Inc.,* 31 NY3d 100 [2018]; *Goshen v Mutual Life Ins. Co. of NY,* 98 NY2D 314 [2002]).

New York law generally recognizes three remedies for an attorney making a fee claim against a former client: (1) the charging lien, (2) the retaining lien, and (3) a plenary action in quantum meriut (*Levy v Laing,* 43 AD3d 713 [1st Dept. 2007]). A charging lien is an equitable ownership interest, originating from common law and later codified under Judiciary Law § 475, which grants an attorney, a property right in a client's cause of action (see *Maher v Quality Bus Services, LLC,* 144 AD3d 990 [2d

4

[* 4]

Dept. 2016]; *J.K.C. v T.W.C.*, 39 Misc.3d 889, 2013 NY Slip. Op. 23060 [Sup Ct, Monroe County 2013]; *Chadbourne & Parke, LLP v AB Recur Finans,* 18 AD3d 222 [1st Dept. 2005]). This equitable ownership interest cannot subsequently be disturbed by the client or anyone claiming through or against the client (*LMWT Realty Corp. v Davis Agency Inc.*, 85 NY2d 462 [1995]). "Manifestly, then, an attorney's charging lien is something more than a mere claim against either property or proceeds... it is a vested property right created by law and not a priority of payment" (*Id.* at 467-468). Initially, a charging lien, would automatically come into existence, without notice or filing, upon commencement of the of an action and was measured by the reasonable value of the attorney's services in the action, unless fixed by an agreement (Judiciary Law §475; *LMWT Realty Corp.* at 467; *Theroux v Theroux*, 145 AD 625 [2d Dept. 1989]; *Resnick v Resnick*, 24 AD 3d 238 [1st Dept. 2005]). Effective January 1, 2013, Judiciary Law § 475 was expanded to include that it also applies to the "initiation of any means of alternative dispute resolution... or the provision of services in a settlement negotiation at any stage of the dispute (Judiciary Law §475; *Bonnaig v Walton*, 41 Misc. 3d 375, 2013 NY Slip Op. 23185 [Sup Ct, NY County 2013]). Thus, attorneys seeking to enforce charging liens may do so not only with respect to an officially commenced proceeding but also for out-of-court settlement agreements.

As a general rule, a charging lien follows the fund created by a settlement of the claim and it attaches to the amount agreed upon in settlement the instant that the agreement is made, and if the defendant pays over to the client without providing for the lien of the attorney, he violates the rights of the latter and must stand the consequences (*Fontana v Republic of Argentina*, 962 F.3d 667 [2d Cir. 2020]; see *In re Shirley Duke Assoc.*, 611 F2d 15 [2d Cir. 1979]; citing *Fischer-Hansen v Brooklyn, Hgts. R. Co.*, 173 NY 492 [1903]; *Chadbourne & Parke, LLP* at 223). Thus, an attorney may enforce his lien against a defendant who failed to provide for the attorney's fee because a defendant who has knowledge of a plaintiff's attorney's lien is under an affirmative duty to protect the lien, and if he fails to do so, he is liable for the reasonable value of that attorney's services to his client *(Fontana* at 676; *Fischer-Hansen* at 501; *Sargent v New York Cent. & H.R.R. Co.*, 209 NY 360 [1913]; see also *Schneider, Kleinick, Weitz, Damashek & Shoot v City of New York*, 302 AD 2d 183 [1st Dept. 2002]; citing *Sehlmeyer v Universal Oven Co.*, 118 AD2d 692 [2d Dept. 1986]). A charging lien thus may be enforced even when the proceeds have passed into the possession of the client or a third party with knowledge, although the right to enforce such a lien will be waived by any action inconsistent with an intent to enforce the lien (see *Kaplan v Reuss*, 113 AD 2d 184 [2d Dept. 1985]; *Fontana v Republic of Argentina*, 2021 WL 4481874 [SDNY 2021]; *Sprole v Sprole*, 152 AD3d 1094 [3d Dept. 2017]; *Goldstein, Goldman, Kessler, & Underberg v 4000 East River Road Associates*, 64 AD2d 484 [4d 1978]). Moreover, the Court of Appeals has repeatedly held that an attorney's lien attaches to a settlement even in instances where the settlement was made without the attorney's knowledge, participation in the settlement or where the attorney withdrew

prior to the negotiation of that settlement (see *Fischer-Hansen*; *Sargent* at 365; *Klein v Eubank*, 87 NY2d 459 [1996]). The one exception to an attorney's entitlement to a lien is when the attorney is terminated for cause (*Klein v Eubank*, 87 NY2d 459 [1996]; *Maher v Quality Bus Service, LLC*, 144 AD3d 990 [2d Dept. 2016]; *Callaghan v Callaghan*, 48 AD3d 500 [2d Dept. 2008]). While termination by cause may be based upon either negligence or misconduct, more than a generalized dissatisfaction with counsel's services is required and the client must make a prima facie showing of cause in order to trigger a hearing on the issue (*Maher at 992*; *Roe v Roe*, 117 AD3d 1217 [3d Dept. 2014]; *Chadbourne & Parke, LLP* at 222).

Here, the court finds that documentary evidence submitted by SCA did not utterly refute Plaintiff's factual allegations that SCA held funds belonging to Plaintiff or in which Plaintiff had an interest in and failed to pay out as required, nor conclusively establish a defense as a matter of law. SCA submits à copy of the Engagement Letter and Retainer Agreement, a copy of the Purchase and Sale Agreement, a copy of the Warranty Deed dated December 11, 2020, by 35 Delevan Owners LLC granting to 21 and 35 Delevan LLC title to the property, and a copy of the Closing Settlement Statement issued by Old Republic National Commercial Title Services in connection with the closing on May 26, 2022, between 21 and 35 Delevan LLC as "seller" and SCA as "purchaser."

While a retainer agreement alone may be insufficient to establish an "appearance" under Judiciary Law 475 (see *Cataldo v Budget Rent A Car Corp.*, 89 NY2d 811[1997]), it is undisputed that 35 Delevan and Harbor retained Plaintiff's predecessor-in-interest and agreed to pay a contingency fee in exchange for legal services relating to its condemnation proceeding. It is also undisputed that 35 Delevan's name change to "21 and 35 Delevan LLC" was a change in name only and not ownership, and that 21 and 35 Delevan LLC agreed to be bound under the original Engagement Letter and Retainer Agreement. Furthermore, SCA does not dispute that it commenced a condemnation proceeding by sending Notice of a Public Hearing nor does it argue or proffer evidence that Plaintiff did not engage in settlement negotiations.

SCA cites *Schneider, Kleinick, Weitz, Damashek & Shoot v City of New York*, 302 AD 2d 183 (1st Dept. 2002) and *Chesley v Union Carbide Corp.*, 927 F.2d 60 (2d Cir. 1991) to support the position that filing a formal proceeding is necessary in order for there to be statutory liability against third parties because the court must have jurisdiction over the third party and the settlement funds. Not only does that claim fail to rebut the settlement negotiation language that was added to Judiciary Law § 475 by the 2012 amendment but is in direct contravention of the statute which states that "the court upon the Petition of the client or the attorney may determine and enforce the lien" (see Judiciary Law § 475). Moreover, as stated in *Schenider*, enforcement of a charging lien is founded upon the equitable notion that the proceeds of a settlement are

6

[* 6]

ultimately under the control of the court and the parties within its jurisdiction (see *Rooney v Second A.R. Co.,* 18 NY 368 [1885]). Similarly, the court in *Chesley* held not only that lower District Court's forum non conveniens dismissal did not automatically preclude any invocation of ancillary jurisdiction to consider the appellant's application for attorney's fees, but also that the ability to dismiss an action for forum non conveniens is only possible if the court initially had jurisdiction. [1] Thus, Plaintiff has sufficiently alleged facts to support that it appeared or participated in negotiation as required by statute.

Under Judiciary Law § 475, no formal notice is required, thus it is immaterial that Plaintiff's Notices of Liens were defective because notice is only required under Judiciary Law 475-a and Plaintiff is not relying on §475-a. Judiciary Law § 475 is initiated by either the commencement of an action or the invocation of settlement negotiations, whereas § 475-a is initiated only if *prior* to the commencement of an action or the invocation of settlement negotiations, an attorney serves a notice of lien upon the person or persons against whom his or her client has or may have a claim or cause of action. In that instance, the attorney has a lien upon the claim or cause of action from the time such notice is given.

SCA cites language from the Engagement Letter, paragraphs 2, 3(I), and 9(d)(1) of the Purchase and Sale Agreement, to support that under the terms of the agreements that Plaintiff's entitlement to any funds can only arises once money leaves SCA's hands and are delivered to 35 Delevan and Harbor, which never happened because SCA never possessed any funds. However, since Plaintiff alleges that it has appeared or participated in settlement negotiations under § 475, the charging lien would follow the fund created by the settlement and attach to the amount agreed upon the instant that the agreement is made.

Contrary to SCA's contention, Judiciary Law § 475 may apply to third parties who knowingly transfer proceeds of a settlement without accounting for an attorney's liens. Here, the Engagement Letter and Retainer Agreement defines "amounts received" to include proceeds obtained by settlement. Additionally, it states in part that that "the attorneys' fee shall be computed on the gross amount recovered," that "Goldstein. Rikon, Rikon & Houghton. P.C. shall have exclusive right to negotiate any settlement on behalf of the Client," and that "said attorneys' compensation and disbursements are to be paid as and when the award is paid by the condemnor."

Furthermore, Paragraph 3(I)(t) of the Purchase and Sale Agreement states that:

> "On the Closing Date, the Property shall be conveyed...in proper form for recording... so as to convey to Purchaser good, marketable and insurable fee simple title to the Property, subject only to the following exceptions to

---

[1] In *Chesley*, the court did not dismiss the matter on the grounds that it lost jurisdiction over the settlement funds to the court in India, but rather because it would have been an abuse of discretion for the lower district court to have considered the petitioner's fee application in view of the fact that they never appeared on behalf of any parties in the Indian litigation nor had they made an application for payment of the settlement funds in India beforehand.

7

[* 7]

title: *liens against the proceeds of the sale* of the Property or against Seller's files relating to the Property, *including but not limited to liens filed or asserted by Seller's [prior counsel]*...however which lien(s) shall be treated as set forth in Article 4 below."

Paragraph 4 of the Purchase and Sale Agreement states that:

"If, on the Closing Date, the Property is affected by *any lien* which, pursuant to the provisions of this Agreement, *Seller is required to discharge or satisfy, the provisions of Section 11* below shall be applicable with respect to such lien."

"The foregoing notwithstanding, Seller shall indemnify, defend and hold-harmless the Purchaser from *the "attorneys' lien" noted in Sections 3 I(t) and 5 (A)(x) herein*, including without limitation, *attorneys' fees* and expenses incurred in the discharge of such lien. The provisions of the preceding sentence shall survive the Closing."

Paragraph 5(A)(x) of the Purchase and Sale Agreement states that:

"To Seller's knowledge, there are no claims, litigation or proceedings or governmental investigations pending or, to the knowledge of Seller, threatened in writing against or relating to Seller or the Property that could have a material adverse effect on Seller's title to the Property, *except for claims, litigation or liens now or hereafter filed or asserted by Seller's prior counsel, Goldstein, Rikon, Rikon & Levi, P.C., with respect to the proceeds of the sale of the Property or Seller's files relating to the Property (or both), which Purchaser acknowledges have been disclosed by Seller,* and which nevertheless will be treated as set forth in Article 4 hereof."

Paragraph 11 of the Purchase and Sale Agreement states in part that:

"If on the date of Closing there are any other liens or encumbrances (besides property taxes, assessments, water and sewer charges), which Seller is obligated to pay and discharge under the terms of this Agreement, Seller may use any portion of the balance of the Purchase Price to satisfy the same..."

Plaintiff sent a copy of a Notice of Lien and an Amended Notice of Lien to SCA on April 11, 2022, and a copy of an Amended Notice of Lien to the title company on April 21, 2022, and according to the Closing Settlement Statement dated May 26, 2022, SCA paid a total of $32,730,000 to the title

8

company, of which "21 and 35 Delevan LLC" received $21,669,999.18 from the title company after apportionment.

Accordingly, the documentary evidence submitted does not conclusively refute allegations that Defendants not only knew about Plaintiff's charging lien but paid out the settlement proceeds after the lien arose and attached to the proceeds without paying Plaintiff and while SCA states that Plaintiff was fired for cause, which would eliminate its entitlement to a charging lien, SCA's bare conclusory statement without more in insufficient to rebut Plaintiff's claim or to trigger a hearing on the issue.

When a party moves to dismiss a complaint pursuant to CPLR § 3211(a)(7), the standard is whether the pleading states a cause of action, not whether the proponent of the pleading has a cause of action (*Leon v. Martinez*, 84 NY2d 83, 87 [1994]; *Skefalidis v China Pagoda NY, Inc.*, 210 A.D. 3d 925 [2d Dept. 2022]); *Oluwo v Sutton*, 206 A.D.3d 750 [2d Dept. 2022]; *Sokol v Leader*, 74 A.D.3d 1180 [2d Dept. 2010]). Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss (*Eskridge v Diocese of Brooklyn*, 210 A.D.3d 1056 [2d Dept. 2022]; *Zurich American Insurance Company v City of New York*, 176 A.D.3d 1145 [2d Dept. 2019]; *EBC I Inc. v Goldman, Sachs & Co.*, 5 NY3d [2005]).

On a motion to dismiss a complaint pursuant to CPLR § 3211(a)(7), the burden never shifts to the non-moving party to rebut a defense asserted by the moving party (*Sokol* at 1181; *Rovello v Orofino Realty Co. Inc.*, 40 NY2d 970 [1976]). CPLR § 3211 allows a plaintiff to submit affidavits, but it does not oblige him or her to do so on penalty of dismissal (*Id.*; *Sokol* at 1181). Affidavits may be received for a limited purpose only, serving normally to remedy defects in the complaint and such affidavits are not to be examined for the purpose of determining whether there is evidentiary support for the pleading (Id.; *Rovello* at 635; *Nonon* at 827). Thus, a plaintiff will not be penalized because he has not made an evidentiary showing in support of its complaint.

Unlike on a motion for summary judgment, where the court searches the record and assesses the sufficiency of evidence, on a motion to dismiss, the court merely examines the adequacy of the pleadings (*Davis v. Boeheim*, 24 NY3d 262, 268 [2014]). The appropriate test of the sufficiency of a pleading is whether such pleading gives sufficient notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved and whether the requisite elements of any cause of action known to our law can be discerned from its averments (*V. Groppa Pools, Inc. v. Massello*, 106 AD3d 722, 723 [2d Dept 2013]; *Moore v Johnson*, 147 AD2d 621 [2d Dept 1989]).

A constructive bailment is one implied by law when one comes into lawful possession of another's personal property, other than by mutual contract (*Martin v Briggs*, 235 AD2d 192 [1st Dept. 1997]; *Mack v Davidson*, 55 AD2d 1027 [4th Dept. 1977]). It is the element of lawful possession, however created, and the duty to account for the thing as the property of another that

9

[* 9]

creates the bailment (*Martin* at 197; *Foulke v New York Consolidated Railroad Co.*, 228 NY 269 [1920]). A bailment may arise from the bare fact of the thing coming into the actual possession and control of a person fortuitously, or by mistake as to the duty or ability of the recipient to affect the purpose contemplated by the absolute owner (*Id.*; *Phelps v People*, 72 NY 334 [1878]). Additionally, taking lawful possession without present intent to appropriate creates a bailment (*Id.*; *Seaboard Sand & Gravel Corp. v Morgan Towing Corp.*, 154 F.2d 399 [2d Cir. 1946]).

Here, Plaintiff has sufficiently stated a cause of action for a constructive bailment inter alia paragraphs 42 though 47 of its Verified Complaint.

Accordingly, it is hereby,

ORDERED, that New York City School Construction Authority's motion (Motion Seq. 1) to dismiss Goldstein, Rikon, Rikon, & Levi, P.C.'s Verified Complaint pursuant to CPLR §§ 3211(a)(1) and (a)(7) is denied.

This constitutes the decision and order of the court.

_____

Hon. Ingrid Joseph J.S.C.

**Hon. Ingrid Joseph**
**Supreme Court Justice**